IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DOODSON INSURANCE BROKERAGE
  OF TX, LLC

  Plaintiff, Counter-Defendant

      v.

INDEMNITY INSURANCE CORPORATION,
  RRG

  Defendant, Counter-Plaintiff,

      v.

AXIS INSURANCE COMPANY,

  Counter-Defendant.

CIVIL NO.: WDQ-12-1606

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Doodson Insurance Brokerage of TX, LLC ("Doodson") sued
Indemnity Insurance Corporation, RRG ("Indemnity") for a
declaratory judgment concerning its representations about
insurance policies.  Indemnity counterclaimed, joining AXIS
Insurance Company ("AXIS") as defendant, for tort and insurance
claims.  Pending are Doodson's and AXIS's motions to dismiss and
Doodson's motion to strike.  Also pending are Indemnity's
motions for sanctions and for a temporary restraining order and
preliminary injunction.  No hearing is necessary. *See* Local
Rule 105.6.  For the following reasons, AXIS's motion to dismiss
will be granted.  Doodson's motion to dismiss will be granted in

part and denied in part.  Doodson's motion to strike, and
Indemnity's sanctions and injunction motions will be denied.

I.   Background

     A.   Factual Background[1]

     Doodson is a brokerage, selling insurance products for AXIS
and other companies to nightclubs and restaurants.  *See* ECF No.
17 ¶ 4, 6.  These Commercial General Liability ("CGL") policies
generally cover "bodily injury" from "occurrences."  *Id.* ¶ 6;
*see* ECF No. 1-1 at 1 (standard CGL form).  Standard policies
exclude bodily injury "expected or intended from the standpoint
of the insured."  ECF No. 1-1 at 1.  The exclusion does not
apply, however, to bodily injury "resulting from the use of
reasonable force to protect persons or property."  *Id.*

     Indemnity believes that assault and battery claims[2] are not
covered by these policies.  ECF No. 17 ¶ 6.  It alleges that
Doodson represents to potential insureds that standard CGL
policies fully cover assaults and batteries, albeit "silently,"
without direct reference in the policy.  *Id.* ¶¶ 11, 31.

---

[1] For the motions to dismiss for failure to state a claim, the
well-pled allegations in the counterclaim are accepted as true.
*See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).
In reviewing the motion to dismiss, the Court may consider
allegations in the counterclaim, matters of public record, and
documents attached to the motion to dismiss that are integral to
the counterclaim and authentic.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] The parties often refer to these claims as "A&B."  *See, e.g.*,
ECF No. 17 ¶ 12.

Indemnity's standard policies expressly exclude assault and battery claims, but it offers an endorsement to CGL policies expressly covering assault and battery claims. *Id.* ¶¶ 33-34. Because of its interpretation, Doodson charges less for policies it sells. *See id.*

In 2010, Doodson quoted coverage to a business called Metro, to which Indemnity was also trying to sell insurance. *Id.* ¶ 52. Doodson falsely represented that its policy contained full assault and battery coverage, and offered it for substantially less than Indemnity. *Id.* ¶ 53. Metro purchased insurance from Doodson. *Id.* ¶ 54.

In April 2012, Doodson falsely told Chris Sherman that a policy that it had quoted for Noho Restaurant Inc. d/b/a Bow & Truss contained assault and battery coverage with no exclusions. *Id.* ¶ 43. On July 19, 2012, Doodson falsely represented to Michael Swier that its quotation of AXIS CGL and Liquor Liability to New York's Bowery Ballroom and Mercury Lounge contained full assault and battery coverage. *Id.* ¶¶ 47-48.

B.   Evidence for Sanctions

On October 17, 2007, a broker[3] made claims about when a bouncer will be covered for hitting a patron under CGL insurance

---

[3] The identity of the broker has been obscured by formatting problems within the emails. *See* ECF No. 27-2 at 3.

policies.[4]  ECF No. 27-2 at 3.  Roger Sandau, then Chief
Operating Officer of The Agency, and now CEO of Doodson, wrote
to Jeff Cohen, president of Indemnity, that the broker's email
contained "complete misrepresentations by the broker on the A&B
issue."  ECF No. 27-2 at 1; *see* ECF No. 30-2 ¶¶ 2, 3.

In December 2011, there was a series of emails between
Cohen, Doodson President Paul Bassman, and an insurance agent
named Bill Taylor.  *See* ECF No. 30-3 at 6.  Taylor asserted that
his standard CGL forms covered assault and battery.  *Id.* at 4-5.
Although he apparently agreed with this position, *see* ECF No.
30-5 at 2, Bassman, using language from Cohen, asked Taylor for
clarification.  *See id.*; ECF No. 30-3 at 3-4.

C.   Procedural History

On May 30, 2012, Doodson sued Indemnity seeking a
declaration that it has not misrepresented assault and battery
coverage under standard CGL forms.  ECF No. 1.  On June 22,

---

[4] Specifically the email stated:

> Basically the only thing that will not be covered would be
> intentional acts.  In other words, if a bouncer beats up a
> patron or punches them first, it becomes more or less an
> intentional act that we don't want to cover.
>
> If the bouncer is doing his job and a patron hits him first
> **he can fight back and be covered**.  In either event, <u>the
> "Silent" on A&B defends the named insured until the courts
> determine who started the incident</u>.

ECF No. 27-2 at 3 (emphases in original).

4

2012, Indemnity answered and counterclaimed against Doodson, alleging tort claims. ECF No. 5. On July 20, 2012, Doodson moved to dismiss and for judgment on the pleadings.[5] ECF No. 14. On August 3, 2012, Indemnity amended its counterclaim and joined AXIS as a counter-defendant, alleging (1) tortious interference with a contractual relationship, (2) tortious interference with existing business relationships, (3) tortious interference with prospective business relationships, (4) civil conspiracy, (5) injunctive relief, and (6) violations of the Texas Insurance Code. ECF No. 17. The same day, Indemnity moved for a temporary restraining order and a preliminary injunction.[6] ECF No. 15.

On August 20, 2012, Doodson moved to dismiss the amended counterclaim. ECF No. 25. On August 24, 2012, AXIS moved to dismiss the amended counterclaim. ECF No. 28. The same day, Indemnity moved for sanctions against Doodson. ECF No. 27. On August 28, 2012, Doodson opposed the sanctions. ECF No. 30.

On September 10, 2012, Indemnity opposed the dismissal motions. ECF No. 33. On September 14, 2012, it replied on sanctions. ECF No. 35.

---

[5] On August 3, 2012, Indemnity opposed, ECF No. 16, and on August 20, 2012, Doodson replied, ECF No. 24.

[6] On August 6, 2012, Doodson opposed the motion. ECF No. 18. On August 24, 2012, AXIS opposed. ECF No. 29. On September 10, 2012, Indemnity replied. ECF No. 34.

On September 26, Doodson replied to its motion to dismiss. ECF No. 38.  On September 28, 2012, AXIS replied to its motion to dismiss.  ECF No. 41.  The same day, Indemnity filed a supplemental brief supporting its motion for sanctions.  ECF No. 42.

On October 1, 2012, Doodson moved to strike Indemnity's supplemental brief.  On October 18, 2012, Indemnity responded. ECF No. 57.

II.  Analysis

A.  Motions to Dismiss

Doodson and AXIS seek to dismiss each count in Indemnity's counterclaim for failure to state a claim.

1.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff

must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

2.    Count I: Tortious Interference with a Contract

Doodson and AXIS assert that Indemnity's tortious
interference claims fail to allege a plausible claim for relief
under *Twombly* and *Iqbal*.[7]  *See* ECF Nos. 25-1 at 12, 28-1 at 6.

---

[7] Doodson also asserts that Indemnity's claims are subject to the
heightened pleading requirements for fraud under Fed. R. Civ. P.
9(b).  ECF No. 25-1 at 9.  Because Indemnity's tortious

7

Doodson contends that its allegations are sufficient.   ECF No. 33 at 20.

Under Maryland law,[8] to state a claim for tortious interference with a contract, Indemnity must allege (1) the existence of a contract between it and a third party; (2) Doodson's and AXIS's knowledge of the contract; (3) Doodson's and AXIS's intentional interference with the contract; (4) breach of the contract by the third party; and (5) resulting damages to Indemnity. *Ultrasound Imaging Corp. v. Am. Society of Breast Surgeons*, 358 F. Supp. 2d 475, 479-80.

Here, the amended complaint lacks a plausible allegation of wrongdoing by Doodson and AXIS showing that Indemnity is entitled to relief.   It alleges that "Doodson, AXIS, and others know and knew of Indemnity's business, or reasonably should have known of Indemnity's contractual and other business relationships."   ECF No. 17 ¶ 56.   It does not identify any

---

interference allegations are insufficient under *Twombly* and *Iqbal*, the Court will not reach this argument.

[8] The parties assume that Maryland law applies without offering any choice of law analysis.   In a diversity action, such as this, this Court must apply the choice of law rules of Maryland, the state where it sits.   *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

For tort claims, Maryland applies the law of the jurisdiction "where the last act required to complete the tort occurred," namely the place of injury.   *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000).   Because Indemnity's place of business is in Maryland, it was harmed here, and Maryland law applies.   *See* ECF No. 17 ¶ 1.

contract of which AXIS and Doodson were aware that was then breached, as required. *See Ultrasound Imaging*, 358 F. Supp. 2d at 479. Instead, Indemnity offers only conclusions based on the elements of the claim, without providing any pertinent facts. These allegations are insufficient to plausibly state a claim. *See Twombly*, 550 U.S. at 555. Count I will be dismissed.

>    3.   Counts II and III: Tortious Interference with
>         Economic Relationships

Under Maryland law, there are two types of tortious interference with a business: (1) interference with a contractual relationship resulting in breach and (2) maliciously or wrongfully interfering with economic relationships in absence of a breach. *Kaser v. Fin. Protection Marketing, Inc.*, 831 A.2d 49, 53 (Md. 2003). Count III and Count II, to the extent it alleges a cause of action in absence of a breach of contract, are analyzed under the latter.

To state a claim for tortious interference with an economic relationship, Indemnity must allege that (1) Doodson and AXIS committed intentional and willful acts, (2) calculated to cause damage to Indemnity's lawful business, (3) with the unlawful purpose of causing such damage, without right of justification, and (4) that actual damage has resulted from those acts. *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d

678, 691 (D. Md. 2001) (*citing Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 269 (Md. 1994)).

The substance of the amended complaint is that Doodson's behavior of allegedly falsely describing its policies "artificially deflate[s] the market prices for Indemnity's appropriately underwritten and priced assault and battery coverage." ECF No. 17 ¶ 46.  There is no allegation that in Doodson's negotiations with various clients it was attempting to steal clients from Indemnity.  Further, Indemnity's assertion of damage to the market does not show an intent to damage Indemnity specifically.  It simply alleges that Doodson and AXIS knew of unspecified business relationships, and their assertions about the insurance coverage lowered prices so that Indemnity lost sales.[9]  *Id.* ¶ 61, 64.  The only lost business identified is that of Metro.  *See* ECF No. 17 ¶ 60.  Indemnity has not, however, alleged that Doodson or AXIS knew that Indemnity was offering its insurance to Metro or that its allegedly fraudulent offer was intended to harm Indemnity specifically.  Indemnity's allegations are conclusionary and do not plausibly allege the

---

[9] In its opposition, Indemnity references subsequent "account poaching" by Doodson.  ECF No. 33 at 31.  These arguments are irrelevant, as the motion to dismiss is reviewed only on the basis of the counterclaim.  *See Brockington*, 637 F.3d at 505.

requisite intent by Doodson and Indemnity.[10]  *See Twombly*, 550 U.S. at 555.  Counts II and III will be dismissed.

        4.   Count IV: Civil Conspiracy

The parties agree that the civil conspiracy claim must rise and fall with the tortious interference counts.  *See* ECF Nos. 25-1 at 15, 33 at 29-30; *see also Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (stating than an underlying tort is required for the civil conspiracy claim).  Accordingly, Count IV will be dismissed.

        5.   Count VI: Texas Insurance Code

Indemnity alleges violations of Tex. Ins. Code Ann. §§ 541.051(1), (5), 510.052.  ECF No. 17 ¶¶ 82-84.  Section 541.051(1) prohibits statements misrepresenting the terms, benefits or advantages promised, or dividends to be received of an insurance policy issued or to be issued.  Tex. Ins. Code Ann. § 541.051(1).  Section 541.051(5) prohibits "a misrepresentation

---

[10] Indemnity relies on *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80 (D. Mass. 2010) to show that Doodson had the requisite intent in luring its customers.  ECF No. 33 at 23-24.  *Guest-Tek* is distinguishable because there a former employee of Guest-Tek took a contact list and was contacting customers in a specific attempt to get their business.  *See Guest-Tek*, 731 F. Supp. 2d at 88.  The other cases on which Indemnity relies are similarly unhelpful.  *See Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 730 (S.D.N.Y. 2012) (allegations of misrepresentations about the plaintiff's professional honesty); *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 5476780, at *7 (N.D. Ill. Dec. 29, 2010) ("Versity alleged that the defendants were aware of Versity's business and its customer base and jointly orchestrated a campaign to boycott Versity's products . . .").

to a policyholder insured by any insurer for the purpose of
inducing or that tends to induce the policyholder to allow an
existing policy to lapse or to forfeit or surrender the policy."
*Id.* § 541.051(5)

Section 510.052 prohibits misleading statements "placed
before the public" about the business of insurance:

(1) in a newspaper, magazine, or other publication;
(2) in a notice, circular, pamphlet, letter, or poster;
(3) over a radio or television station;
(4) through the Internet; or
(5) in any other manner.

*Id.* § 541.052.  The Code authorizes an action for damages.  *Id.*
§ 541.151.

a.   AXIS

AXIS asserts that Indemnity has not alleged that it made
any misrepresentations as required for liability.  ECF No. 28-1
at 13.  Indemnity contends that it alleged AXIS provided a
quotation to Bowery Ballroom and Mercury Lounge.  ECF No. 33 at
26.

Indemnity is correct that it has alleged that AXIS provided
a quotation.  ECF No. 17 ¶ 47.  It did not, however, plead that
AXIS made any misrepresentation.  With regard to Bowery Ballroom
and Mercury Lounge, the counterclaim specifically states that
"*Doodson* falsely represented . . . that the proposed AXIS policy

12

contains full assault and battery coverage."[11]  *Id.* ¶ 48.  There
is no allegation of a misrepresentation by AXIS.  Accordingly,
Count VI against AXIS will be dismissed.

        b.   Doodson

        1.   Section 541.052

   Doodson asserts that Indemnity has not pled publication as
required by § 541.052(b).[12]  ECF No. 25-1 at 16.  Indemnity
contends that Doodson's disclosure to clients was sufficient to
trigger the section.  ECF No. 33 at 31.

    Few courts have interpreted the requirements of § 541.052.
In the only on-point case found by the Court, the defendant was
not liable because the statement was made over the telephone.
*Anderson v. Zurich Am. Ins. Co.*, Civil No. H-05-3652, 2009 WL

---

[11] To the extent that Indemnity argues that an agency
relationship imputes Doodson's statements to AXIS, *see* ECF No.
33 at 7-8, the act of selling insurance alone is insufficient to
create that applicable agency relationship.  *See Guthrie v.
Republic Nat'l Ins. Co.*, 682 S.W.2d 634, 639 (Tex. App. 1984).
Indemnity has specifically alleged that Doodson sells insurance
for AXIS and other companies, *see, e.g.*, ECF No. 17 ¶ 6,
negating any inference of an employment relationship that could
lead to agency.  *Cf. Guthrie*, 682 S.W.2d at 639.

[12] Doodson also argues that Rule 9(b) should apply to these
allegations.  ECF No. 25-1 at 10.  The Federal Courts in Texas
have held that Rule 9(b) applies to Texas Insurance Code claims
when they are "substantively identical to fraud."  *Partain v.
Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547,
557 (S.D. Tex. 2012).  One of the elements of fraud under Texas
law is an intention to induce the plaintiff's reliance.  *Id.*
Here, there is no allegation that Indemnity relied upon
Doodson's alleged misrepresentations.  Accordingly, Rule 9(b) is
inapplicable.  *See Partain*, 838 F. Supp. 2d at 557.

540795, at * 7 (S.D. Tex. Mar. 4, 2009).  Following *Anderson* and the text of § 541.052(b) it is clear that the statements to the public must be a mass communication to the public at large to incur liability.[13]  As Indemnity has not alleged this, the § 541.052 claim will be dismissed.

2.    Section 541.051

Doodson argues that for the misrepresentations required for liability under § 541.051, Indemnity is required to prove that CGL coverage can never cover assault and battery claims.  *See* ECF No. 25-1 at 2, 16.  Indemnity, however, alleges that Doodson misleads potential insureds, including Metro, Bow & Truss, and the Bowery Ballroom and Mercury Lounge, by claiming to offer full "silent" assault and battery coverage.  *See* ECF No. 17 ¶¶ 31, 43, 48, 53.  The CGL, however, excludes bodily injury from the unreasonable use of force to protect persons and property, which Indemnity alleges is the substance of claims against bouncers.  *See* ECF Nos. 1-1 at 1, 17 ¶ 29 n.1.  Taking Indemnity's allegations as true, Indemnity has alleged that

---

[13] Tex. Ins. Code Ann. § 541.052(b) lists the ways to disseminate the communication to the public as:
> (1) in a newspaper, magazine, or other publication;
> (2) in a notice, circular, pamphlet, letter or poster;
> (3) over a radio or television station;
> (4) through the Internet; or
> (5) in any other manner.

Consistent with *Anderson*, the Court reads these as examples of ways to reach a large number of people, not specific persons. *Anderson*, 2009 WL 540795, at * 7.

Doodson is misleading customers about the scope of any silent assault and battery coverage by claiming that it fully covers any assault and battery claim.

Doodson also contends, with minimal discussion, that Indemnity has failed to allege that it has sustained actual damages. ECF No. 25-1 at 15. Indemnity asserts that it has sustained damage by failing to gain accounts. ECF No. 33 at 30-31.

The Court cannot find, and the parties have not cited, any cases interpreting the actual damages requirement of the Texas statute. Indemnity has alleged that it lost Metro's business because of Doodson's misrepresentation. ECF No. 17 ¶ 54. It requests $150,000 in compensatory damages for the business it has lost because of Doodson's misrepresentations. *Id.* ¶ 85. Indemnity has alleged damages from Doodson's actions. Count VI will be dismissed as to § 541.052 only.

6. Count V: Injunctive Relief

AXIS asserts that this count should be dismissed because Indemnity has failed to allege a claim against it for tortious interference. ECF No. 28-1 at 12. Doodson and Indemnity have not addressed this claim.

As stated above, the tortious interference claims against Doodson and AXIS will be dismissed. *See supra* Part II.A.2-3. The amended counterclaim relies on the tortious interference

claims, and not the Texas Insurance Code claim for the
injunctive relief. *See* ECF No. 17 ¶ 69-79. Further, the Texas
Insurance Code authorizes only damages actions. *See* Tex. Ins.
Code Ann. § 541.151. Accordingly, Count V will be dismissed as
to Doodson and AXIS.

AXIS's motion to dismiss will be granted. Doodson's motion
to dismiss will granted in part and denied in part.[14]

B.   Indemnity's Request to Amend

In its opposition, Indemnity asks for permission to amend
its counterclaim in the event the Court dismissed it. ECF No. 33
at 26 n.7. Doodson and AXIS have not opposed Indemnity's
request to amend.

Because more than 21 days have passed since Doodson and
AXIS moved to dismiss, Indemnity may amend its counterclaim only
if Doodson and AXIS consent or with the Court's permission.
Fed. R. Civ. P. 15(a)(2); *Rice v. PNC Bank, N.A.*, No. PJM-10-
0007, 2010 WL 1711496, at *2 (D. Md. Apr. 26, 2010). Fed. R.
Civ. P. 15(a)(2) instructs that leave should be freely given
when justice requires. Leave should be denied only when

---

[14] Because Indemnity has amended its original counterclaim,
Doodson's original motion to dismiss will be denied as moot.
The same document also seeks judgment on the pleadings. *See* ECF
No. 14. A party may seek judgment on the pleadings only when
the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings
are not closed until an answer to the counterclaim is filed.
*See* Charles Alan Wright et al., *Federal Practice & Procedure*, §
1367. As Doodson has not filed its answer to the counterclaim,
the motion for judgment on the pleadings will be denied.

amendment would prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). As there is no indication of prejudice or futility, Indemnity will be granted leave to amend its counterclaim.

C.  Motion for a Temporary Restraining Order and
    Preliminary Injunction

Indemnity seeks a Temporary Restraining Order and Preliminary Injunction based on its allegations of tortious interference. ECF No. 15. Because these claims will be dismissed, the motion will be denied as moot.[15]

D.  Motion to Strike Indemnity's Supplemental Brief

Doodson asks the Court to strike Indemnity's second supplemental brief to its motion for sanctions because there is no authority for it under the Federal Rules. ECF No. 43. Indemnity asserts that Fed. R. Civ. P. 15(d) authorizes its action. ECF No. 57.

Fed. R. Civ. P. 7(a) defines a pleading as a complaint, an answer, and various procedural variations of those documents. Briefing memoranda are not within the definition. *Cf.* Fed. R. Civ. P. 7(a). Fed. R. Civ. P. 15(d) permits "supplemental

---

[15] Although Indemnity has not sought injunctive relief for the Texas law claims, the statute authorizes only a damages action. *See* Tex. Ins. Code Ann. § 541.151.

pleadings." As the brief is not a pleading, Rule 15(d) does not authorize Indemnity's filing.

Doodson has not provided authority for striking Indemnity's brief. *Cf.* ECF No. 43. Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although some cases have held that Rule 12(f) may be used to strike documents other than pleadings such as Indemnity's brief,[16] the weight of recent authority is that such an action is not contemplated or permitted by the Rules.[17]

The Court does have inherent authority to strike other documents.[18] "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Doodson has offered no reason to use such authority here. *Cf.* ECF No. 43.

---

[16] *See, e.g., McLaughlin v. Copeland*, 435 F. Supp. 513, 519 (D. Md. 1977) (collecting cases).

[17] *See, e.g., In re Minh Vu Hoang*, Civ. No. DKC-11-2320, 2012 WL 5995621, at *5 (D. Md. Nov. 29, 2012); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F. Supp. 2d 1020, 1029 (N.D. Ohio 2010); 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1380 & nn.4-6 (3d ed.).

[18] *See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2007); *Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10-cv-01265, 2011 WL 1584764, at *3 (S.D.W.V. Apr. 26, 2011); *Jennings v. Univ. of N.C. at Chapel Hill*, 340 F. Supp. 2d 666, 672 (M.D.N.C. 2004).

Because there is no authority for Indemnity's filing of the supplemental brief, the Court will not consider it in its decision on the motion for sanctions.[19]   It will not, however, strike it from the record.   Doodson's motion will be denied.

E.   Motion for Sanctions

Indemnity seeks sanctions against Doodson because its CEO has taken a position contrary to Doodson's court filings.   ECF No. 27.   Doodson contends that Indemnity has misconstrued the emails and such statements would be more proper for cross examination than sanctions.   ECF No. 30.   It further states that Indemnity should be sanctioned for bringing the motion.   *Id.*

Under Fed. R. Civ. P. 11(b), an attorney or unrepresented party certifies to the court that to the best of his "knowledge, information, and belief" formed after a reasonable inquiry: (1) the action is not being presented for an improper purpose, (2) the legal contentions are warranted, (3) the facts alleged have or will have evidentiary support, and (4) denials of facts are based on evidence or lack of knowledge.   *See* Fed. R. Civ. P. 11(b).   "[I]mproper purpose may be inferred from a claim's lack of factual or legal foundation or other factors such as the

---

[19] The Court notes that Indemnity's supplemental brief appears to complain about various discovery violations.   *See generally* ECF No. 42.   Rule 11 is generally inapplicable to discovery matters. *See* Fed. R. Civ. P. 11(d); *Kwarteng v. Morgan State Univ.*, 128 F. App'x 301, 302-303 (4th Cir. 2005); *see also* Fed. R. Civ. P. 37 (sanctions in discovery).

timing of filing of the complaint." *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 313 (E.D. Va. 2004) (*citing In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)).  Rule 11(c) allows attorneys and parties to be sanctioned for Part (b) violations.

> 1.   Sandau's Statement

Indemnity asserts that Sandau, Doodson's CEO, has taken a position contrary to Doodson's by stating that it is a misrepresentation that "'silent' A&B coverage can exist under a standard CGL policy."  ECF No. 27 at 10.  In the email, dated October 19, 2007, Sandau stated "[c]omplete misrepresentation by the broker on the A&B issue."  ECF No. 27-2 at 1.  Although the email chain's formatting has been lost, it appears that the broker said:

> Basically the only thing that will not be covered would be intentional acts.  In other words, if a bouncer beats up a patron or punches them first, it becomes more or less an intentional act that we don't want to cover.
>
> If the bouncer is doing his job and a patron hits him first **he can fight back and be covered**.  In either event, the "Silent" on A&B defends the named insured until the courts determine who started the incident.

ECF No. 27-2 at 3 (emphases in original).

At the time that Sandau made the statement, he was the Chief Operating Officer of The Agency, the managing general agent for Indemnity.  ECF No. 30-2 ¶ 3.  Sandau swears that his "comment referred to the broker's incorrect generalizations of

20

potential coverage, and the broker's failure to correctly
describe the 'reasonable force' exception to the intentional
acts exclusion."  ECF No. 30-2 ¶ 5.

To the extent that Sandau's views in 2007 can be attributed
to Doodson in a litigation started in 2012, Sandau's explanation
is reasonable.  The CGL Form states that the exclusion "does not
apply to 'bodily injury' resulting from the reasonable use of
force to protect persons or property."  ECF No. 1-1 at 1.  Based
on the CGL Form, Sandau's explanation is reasonable, given the
lack of specificity by the broker.  The Court sees no conflict
with Doodson's position in this case.[20]

     2.  Bassman's Statement

Indemnity argues that Bassman has taken a position contrary
to Doodson's by asking Taylor:

> Regarding Assault and Battery...how can your policy provide
> coverage for assault & battery involving an insured on
> patron altercation?  I assume you are using an ISO form for
> the GL and within that form it has an intentional/expected
> exclusion.  This would most likely bar coverage for any
> intentional act of the insured for example when if [sic] a
> bouncer hits a patron.

---

[20] Indemnity also asserts that another email sent by Sandau
conflicts with Sandau's "recent Affidavit" where he "avers that
a policy endorsement that would delete coverage for expected or
intended acts would 'be a satisfactory substitute for an actual
A&B endorsement [deleting A&B coverage].'"  ECF No. 35 at 5.
Indemnity does not provide a citation for this statement other
than "*See id*" with no antecedent citation.  *See* ECF No. 35 at 4-
55.  The Court can find no such averment by Sandau in either of
his two affidavits in the record.  *Cf.* ECF Nos. 19-1, 30-2.

ECF No. 30-3 at 4.  Indemnity asserts that this is Bassman's position and contrary to Doodson's here.  *See* ECF No. 27 at 2.

The record, and full email chain, reveal that Bassman was actually asking a question posed by Cohen.  *See* ECF No. 30-5 at 2.  Indemnity asserts that Bassman was skeptical of Taylor's position by insisting on questioning him about it.  *See* ECF No. 35 at 8; *see also* ECF No. 30-4 at 2 (Bassman stating "I need to push it yes").  However, the emails show that Bassman apparently held the same view as Taylor--and Doodson in this litigation-- that protection of persons or property *is* covered.  *Compare* ECF No. 30-5 at 2, *with* ECF No. 30-3 at 2.  Bassman's asking of Cohen's questions was apparently just that; Bassman's position does not appear to be contrary to Doodson's.  Indemnity's motion for sanctions will be denied.

3.  Sanctions against Indemnity

Doodson requests sanctions against Indemnity because its motion was frivolous.  ECF No. 30 at 2.  Although the Court does not agree with Indemnity's construction of the emails involved, it does not appear that Indemnity's motion was frivolous or in bad faith, given the complexity of the issues involved.

Doodson also seeks sanctions against Indemnity because the email from Bassman that it submitted with its motion for sanctions is a highly excised version of the true exchange, obscuring the actual communications.  ECF No. 30 at 2; *see* ECF

No. 27-3.  As the full email chain reveals, Bassman did send the email as provided; the context, however, was lacking.  *See* ECF No. 30-3 at 3-4.  Although Indemnity may have been trying to simplify the exchange, it does not appear that Indemnity was attempting to mislead the Court.  Accordingly, the Court will not sanction Indemnity for its motion.  The parties are warned, however, that future excisions of this kind or similar behavior may result in sanctions.

III. Conclusion

For the reasons stated above, Doodson's motion to dismiss the amended counterclaim will be granted in part and denied in part.  AXIS's motion to dismiss will be granted.  Indemnity's sanctions and injunction motions, and Doodson's motion to strike will be denied.

___2/25/13___
Date

_____
William D. Quarles, Jr.
United States District Judge